**UNITED STATES, Appellee,**

**v.**

**Arthur L. DOE, a/k/a "Butchy",
Defendant, Appellant.**

**No. 91–1008.**

United States Court of Appeals,
First Circuit.

Argued Nov. 4, 1991.

Decided March 30, 1992.

Richard B. Klibaner, Cambridge, Mass., by Appointment of the Court, with whom Klibaner & Sabino was on brief, for defendant, appellant.

Ralph F. Boyd, Jr., Asst. U.S. Atty., with whom Wayne A. Budd, U.S. Atty., was on brief, for appellee.

Owen S. Walker, Federal Defender Office, on brief, for Dist. of Mass., amicus curie.

Before BREYER, Chief Judge, COFFIN, Senior Circuit Judge, and SEYLA, Circuit Judge.

BREYER, Chief Judge.

▋ Under federal gun control law, a felon possessing a firearm who "has three previous convictions ... for violent felon[ies]" faces a mandatory minimum prison term of fifteen years. 18 U.S.C. § 924(e). This appeal asks whether the crime of being a felon in possession of a firearm, 18 U.S.C. § 922(g)(1), is itself a "violent felony" for purposes of this sentencing statute. The Eleventh and Ninth Circuits have held that it is. *See United States v. Stinson,* 943 F.2d 1268 (11th Cir.1991); *United States v. O'Neal,* 910 F.2d 663 (9th Cir. 1990). The Fourth Circuit has held that it is not. *See United States v. Johnson,* 953 F.2d 110 (4th Cir.1991); *see also United States v. Chapple,* 942 F.2d 439 (7th Cir. 1991) (felon-in-possession not a "crime of violence" for sentencing under career offender guideline). We agree with the Fourth Circuit and hold that a conviction for being a felon unlawfully in possession of a firearm is *not* a "violent felony" conviction.

## I

### Background

In October 1990, a jury convicted Arthur Doe of unlawful possession of a firearm.

18 U.S.C. § 922(g)(1). At sentencing, the court determined that Doe had three prior convictions for "violent felonies." One of these was a 1985 conviction for the crime of being a felon in possession of a firearm. In light of the statute requiring a sentence enhancement for any offender with "three previous convictions ... for violent felon[ies]," the court enhanced Doe's sentence to the mandatory fifteen year minimum. 18 U.S.C. § 924(e). Doe now appeals both his conviction and his sentence.

## II

### The Present Conviction

We first consider Doe's attack on the lawfulness of his *present,* 1990, felon-in-possession conviction. The substantive statute makes it a crime

for any person ... who has been convicted in any court of a crime punishable by imprisonment for a term exceeding one year ... to ... possess, *in or affecting [interstate or foreign] commerce,* any firearm....

18 U.S.C. § 922(g)(1) (emphasis added). The indictment charged that Doe, "being a person who has been convicted" of a crime punishable for a term exceeding one year, in March 1990,

did possess a firearm and ammunition which *has been shipped and transported in interstate ... commerce,* to wit, a loaded Taurus 9mm, model PT99AF semi-automatic pistol, serial number L47706.

(Emphasis added). Doe argues that the government failed properly to prove that his Taurus pistol (serial number L47706) had moved in interstate commerce.

The government's evidence on this point consisted of: 1) testimony of a Massachusetts sports shop owner that he had ordered the pistol from Ellett Brothers, a South Carolina telemarketing firm, 2) an invoice from Ellett Brothers referring to the Taurus pistol L47706 with the sports shop owner's handwritten notation "Received 12–11–86," and 3) the sports shop owner's statement that he knew that Taurus firearms are "manufactured in Brazil."

Doe argues that the district court erred by admitting the last two items into evidence.

■ First, Doe claims that the invoice was hearsay, Fed.R.Evid. 801(c), and that it did not qualify for admission under the "business records" exception to the hearsay rule. He says that the document's "custodian or other qualified witness" from Ellett Brothers did not testify that the record was compiled in the regular course of business by a person with knowledge of the events it recorded. Fed.R.Evid. 803(6).

Doe's argument misses the point. It was not necessary for an Ellett Brothers "custodian" to testify because the court did not admit the invoice as an *Ellett Brothers* business record. Rather, the court admitted the invoice as a business record of the *sports shop owner.* And, the sports shop owner, as custodian of his own records, qualified the document for admission under the "business records" exception. He testified that he was "responsible for all ... recordkeeping in the business," that he had received the particular invoice, that the receipt notation was in his handwriting, that he relied on the document and "documents such as those," in his business to show "acquisition" of the pistol, and that he kept a gun "acquisition and disposition book" as federal law requires. *See* 27 C.F.R. § 178.-125(e).

The fact that the invoice was a piece of paper which (except for the handwriting) had earlier been the record of a different business, namely Ellett Brothers, is irrelevant. Because it was relied on by the sports shop owner, the Ellett Brothers record was integrated into the records of the sports shop, along with the additional handwritten notation. *See* Fed.R.Evid. 803(6) (exception applies to "memorandum, ... record, [etc.] ... *in any form* ) (emphasis added); *see also United States v. Mendel,* 746 F.2d 155, 166 (2d Cir.1984), *cert. denied,* 469 U.S. 1213, 105 S.Ct. 1184, 84 L.Ed.2d 331 (1985); *United States v. Ullrich,* 580 F.2d 765, 771–72 (5th Cir.1978); *United States v. Pfeiffer,* 539 F.2d 668, 671 (8th Cir.1976).

■ Second, Doe claims that the district court should have excluded the sports shop owner's testimony that he "knows" Taurus pistols are "manufactured in Brazil," on the ground that the witness did not have "personal knowledge" of that fact. *See* Fed.R.Evid. 602 (witness may not testify to a matter without evidence that he had "personal knowledge of the matter"). Evidence proving personal knowledge may, however, "consist of the witness' own testimony," *id.,* and that knowledge includes inferences and opinions, so long as they are grounded in personal observation and experience. *See Visser v. Packer Engineering Associates, Inc.,* 924 F.2d 655, 659 (7th Cir.1991) (en banc). The test is "whether a reasonable trier of fact could believe the witness had personal knowledge." *Folio Impressions, Inc. v. Byer California,* 937 F.2d 759, 764 (2d Cir.1991) (citations omitted). A reasonable trier of fact could believe that the sports shop owner had firsthand knowledge from which he could infer that the pistol was made outside of Massachusetts, indeed in Brazil, particularly since his testimony to this effect was unchallenged. *See United States v. Hickey,* 917 F.2d 901, 904 (6th Cir.1990); *United States v. Davis,* 792 F.2d 1299, 1304–05 (5th Cir.), *cert. denied,* 479 U.S. 964, 107 S.Ct. 464, 93 L.Ed.2d 409 (1986).

### III

#### *The Sentence*

The district court sentenced Doe to fifteen years in prison, because it concluded that his earlier felon-in-possession conviction was for a "violent felony" within the terms of the mandatory-minimum sentence enhancement statute. Doe says that, as a matter of law, that conviction was not for a violent felony.

The Supreme Court has held that, in deciding whether a crime is a "violent felony" for purposes of § 924(e), we may *not* examine the actual circumstances underlying the earlier conviction. Rather, § 924(e)

mandates a formal categorical approach, looking only to the statutory definition of the prior offenses and not to the particular facts underlying those convictions.

*Taylor v. United States,* 495 U.S. 575, 110 S.Ct. 2143, 2159, 109 L.Ed.2d 607 (1990). The *Taylor* Court, in holding that "burglary" is generically a "violent crime," whether or not the *particular* burglary at issue threatens violence, wrote:

> We think the only plausible interpretation of [the word "burglary" in the statute].... is that, like the rest of the enhancement statute, it generally requires the trial court to look only to the fact of conviction and the statutory definition of the prior offense.

110 S.Ct. at 2160. This instruction means that, in the present case, we simply look to the crime as the statute defined it. We cannot consider whether Doe, in fact, committed the earlier felon-in-possession crime in a violent manner. (Doe possessed the gun, in 1985, while lying in wait for an enemy to come out of a restaurant.)

We note that the Supreme Court in *Taylor* did allow a possible exception to its rule. It said:

> This categorical approach ... may permit the sentencing court to go beyond the mere fact of conviction in a narrow range of cases where a jury was actually required to find all the elements of generic burglary. For example, in a State whose burglary statutes include entry of an automobile as well as a building, if the indictment or information and jury instructions show that the defendant was charged only with burglary of a building, and that the jury necessarily had to find an entry of a building to convict, then the Government should be allowed to use the conviction for enhancement.

110 S.Ct. at 2160. This statement, however, means only that, where a single statutory provision defines several different crimes (where, to use the Court's example in *Taylor,* a single statutory provision declares it a crime to break into and enter, "any booth or tent, or any boat or vessel, or railroad car"), a court may have to look at the indictment (or at the jury instructions) to see which of the several different statutory crimes (involving a tent, a railroad car, or a boat) was at issue. *Taylor,* 110 S.Ct. at 2159, quoting Mo.Rev.Stat.

§ 560.070 (1969) (repealed). This exception makes no difference in the present case. Although the statute (in 1985) made it a crime for a felon to "receiv[e]" and to "transport," as well as to "possess," a firearm, the presentence report in the present case tells us that Doe's 1985 conviction was for unlawful *possession;* and no one claims the contrary. Thus, the legal question before us is simply whether or not this "felon-in-possession" crime, considered categorically, is a "violent felony."

The sentence enhancement statute, 18 U.S.C. § 924(e), defines a "violent felony" as:

> any crime punishable by imprisonment for a term exceeding one year.... that—
> (i) has as an element the use, attempted use or threatened use of physical force against the person of another; or
> (ii) is burglary, arson, or extortion, involves use of explosives, or otherwise involves *conduct that presents a serious potential risk of physical injury to another....*

(Emphasis added). We have emphasized the only portion of this statute that might apply to the felon-in-possession count: Is a previously convicted felon's unlawful possession of a gun "conduct that presents a serious potential risk of physical injury to another?" As we have previously pointed out, the circuits have divided about the answer to this question. *See* cases cited at p. 222, *supra.*

Several considerations ultimately convince us that this language does not cover the felon-in-possession crime. First, simple possession of a firearm does not fit easily within the literal language of the statute. The statute gives several specific examples—burglary, arson, extortion, use of explosives—and then adds, "or otherwise involves *conduct* that presents a serious potential risk of physical injury to another." (Emphasis added). One can easily imagine a significant likelihood that physical harm will often accompany the very conduct that normally constitutes, say, burglary or arson. It is much harder, however, to imagine such a risk of physical harm often accompanying the conduct that normally

constitutes firearm possession, for simple possession, even by a felon, takes place in a variety of ways (*e.g.,* in a closet, in a storeroom, in a car, in a pocket) many, perhaps most, of which do not involve likely accompanying violence.

Second, to read the statute less narrowly, in order to cover firearm possession, would also bring within the statute's scope a host of other crimes that do not seem to belong there. To include possession, one would have to focus upon the risk of direct *future* harm that present conduct poses. But, how could one then exclude, say, drunken driving or unlawful transportation of hazardous chemicals or other risk-creating crimes very unlike the burglary, arson, extortion, and explosives use that the statute mentions? There is no reason to believe that Congress meant to enhance sentences based on, say, proof of drunken driving convictions. Rather, we must read the definition in light of the term to be defined, "violent felony," which calls to mind a tradition of crimes that involve the possibility of more closely related, active violence.

Third, many states have similar statutes with language that defines terms such as "crime of violence" or "violent felony." *See, e.g.,* Ala.Code § 13A–11–70(2) (1975); D.C.Code Ann. § 22–3201(f) (1981); Hawaii Rev.Stat. § 134–7 (1990); Minn.Stat. § 624.712 Subd. 5 (1990); Mo.Ann.Stat. § 556.061(8) (Vernon 1991); 18 Pa.Cons. Stat.Ann. § 6102 (Purdon 1990); R.I.Gen. Laws § 11–47–2 (1990); S.C.Code Ann. § 16–23–10 (Law. Co-op 1990); S.D. Codified Laws Ann. § 22–1–2(9) (1990); Utah Code Ann. § 76–10–501(2)(e) (1990). These definitions normally include crimes such as burglary and arson; they nowhere include a crime like felon-in-possession.

Fourth, the United States Sentencing Commission, following a statutory instruction, 28 U.S.C. § 994(a), has written Guidelines with enhancements for those violent offenders with *two* prior convictions for "crimes of violence." U.S.S.G. § 4B1.1. In defining the words "crime of violence," the Guidelines use the very language now before us, namely the words "conduct that presents a serious potential risk of physical injury to another." U.S.S.G. § 4B1.2(1)(ii). The Commission has recently amended its commentary to make clear that these words do *"not include the offense of unlawful possession of a firearm by a felon."* U.S.S.G. § 4B1.2, comment. (n. 2) (emphasis added). The Commission, which collects detailed sentencing data on virtually every federal criminal case, is better able than any individual court to make an informed judgment about the relation between simple unlawful gun possession and the likelihood of accompanying violence. For this reason, and because uniform interpretation of similar language is in itself desirable, we believe we should give some legal weight to the Commission's determination. *Cf. Skidmore v. Swift & Co.,* 323 U.S. 134, 140, 65 S.Ct. 161, 164, 89 L.Ed. 124 (1944) (expert agency's opinions "while not controlling … do constitute a body of experience and informed judgment to which courts … may properly resort for guidance"); *United States v. Denardi,* 892 F.2d 269, 283 (3d Cir.1989) ("guidelines represent the considered judgment of a responsible, expert agency").

We recognize the strong arguments that the Eleventh and Ninth Circuits, and the government in its brief on appeal, have made for an opposite conclusion. After all, a previously convicted felon, unlawfully possessing a gun, *ipso facto,* reveals a willingness to break the law again, perhaps using the gun when doing so. *See Stinson,* 943 F.2d at 1271–72, citing *United States v. Jones,* 651 F.Supp. 1309, 1310 (E.D.Mich.1987), *rev'd on other grounds,* 846 F.2d 358 (6th Cir.1988); *United States v. O'Neal,* 910 F.2d 663, 667 (9th Cir.1990) (discussing legislative history); *United States v. Phillips,* 732 F.Supp. 255, 262–63 (D.Mass.1990). Moreover, legislators, when enacting the felon-in-possession statute, repeatedly referred to the danger that a gun, in the hands of a previously convicted felon, poses for the public. *See* 18 U.S.C.App. § 1201 (congressional declaration that possession of firearms by felons poses threats to commerce, to President, and to Vice–President), repealed by Pub.L. 99–308, § 104(b), 100 Stat. 459; 114 Cong. Rec. 14,773 (comments of Senator Russell Long, sponsor of original version of

§ 922(g)(1), saying that felons "may not be trusted to possess a firearm without becoming a threat to society"); *cf. Scarborough v. United States*, 431 U.S. 563, 572–77, 97 S.Ct. 1963, 1967–70, 52 L.Ed.2d 582 (1977) (discussing congressional concerns about threat of armed felons). The legislators, however, expressed these concerns in the context of criminalizing the conduct. They did not focus on whether or not this new felony was "violent" for sentence enhancement purposes. Nor can we find any significant legislative evidence that the later Congress's use of the words "serious potential risk," instead of the more traditional language "substantial risk" (*see, e.g.,* 18 U.S.C. §§ 16, 3142(f), 3156(a)(4)), was thereby intended to include gun possession crimes (or, say, drunken driving).

Regardless, for the reasons given above, we ultimately find the arguments against including gun possession more convincing. We, like the Fourth Circuit, hold that the felon-in-possession crime is not a "violent felony."

The judgment of conviction is

*Affirmed. The sentence is vacated and the case is remanded for resentencing.*