OPINION AND ORDER
 

 GWIN, District Judge.
 

 On October 31, 1997, Petitioner Elden Boucher filed a
 
 pro se
 
 habeas corpus petition pursuant to 28 U.S.C. § 2241. [Doc. 1]. Petitioner Boucher alleges Respondent Warden John LaManna exceeded his statutory authority by improperly denying him early release under 18 U.S.C. § 3621(e). Boucher says two of the Bureau of Prisons’ internal policies implementing the statutory mandate, Program Statements 5162.02 and 5162.04, improperly consider sentencing enhancements as a means of determining whether he may receive early release.
 

 Respondent Warden LaManna contends that Program Statement 5162.02 correctly interprets the statutory mandate and is not inconsistent with the statute’s plain language. Respondent also claims the more recent policy, Program Statement 5162.04, is a proper exercise of the broad discretion granted the Bureau under § 3621(e)(2)(B).
 

 After Boucher filed his petition, the Sixth Circuit found Program Statement
 
 *885
 
 5162.02 invalid. The Sixth Circuit has not directly addressed the validity of Program Statement 5162.04. Upon review of the parties’ arguments, the Court finds Respondent LaManna’s argument persuasive and denies Boucher’s petition for a writ of habeas corpus.
 

 I. FACTUAL BACKGROUND
 

 Petitioner Boucher is serving a federal sentence for possession with intent to distribute marijuana in violation of 21 U.S.C. 841(a)(1). At the time he was sentenced for this offense, Boucher received a two-level enhancement under U.S. Sentencing Guidelines § 2D1.1 for possession of a dangerous firearm during the commission of the offense.
 

 On April 10, 1997, Petitioner Boucher began serving his sentence. Once incarcerated, Boucher was approved to participate in the Bureau’s Drug Abuse Treatment Program. However, the Bureau of Prisons denied Boucher eligibility for the early release provided to nonviolent offenders in 18 U.S.C. § 3621(e)(2)(B).
 

 In denying Boucher early release, the Bureau relied on Program Statement 5162.02. That policy defines prisoners who receive enhanced sentencing based on possession of a firearm as being violent offenders. On October 31,1997, Petitioner Boucher filed the instant motion under 28 U.S.C. § 2241, arguing he was wrongly denied consideration for early release under Program Statement 5162.02. Boucher argues that Program Statement 5162.02 is an invalid interpretation of the statute because it focuses on sentencing factors rather than the crime of conviction to determine which prisoners are violent offenders eligible for early release consideration. Defendant LaManna concedes that petitioner Boucher exhausted his administrative remedies regarding Program Statement 5162.02.
 

 After Boucher’s petition was filed, the Bureau of Prisons revised its policy that classified all prisoners receiving sentence enhancements for possession of a firearm to be violent offenders. The Bureau of Prisons revised the policy after several circuit courts of appeals struck down Program Statement 5162.02. These courts found that the Bureau impermissibly construed 18 U.S.C. § 3621(e)(2)(B) by considering sentencing enhancements when determining initial eligibility for early release after participation in a drug abuse treatment program.
 
 See Martin v. Gerlinski,
 
 133 F.3d 1076 (8th Cir.1998);
 
 Fristoe v. Thompson,
 
 144 F.3d 627 (10th Cir.1998);
 
 Byrd v. Hasty,
 
 142 F.3d 1395, 1397 (11th Cir.1998);
 
 Roussos v. Menifee,
 
 122 F.3d 159 (3rd Cir.1997);
 
 Davis v. Crabtree,
 
 109 F.3d 566 (9th Cir.1997).
 

 In response to these losses, the Bureau released a new Program Statement in October 1997. Under this new policy, Program Statement 5162.04, the Bureau of Prisons uses its discretion to deny early release rather than disqualifying persons with weapon possession enhancements from consideration.
 

 In January 1998, the Bureau informed Boucher that it had re-evaluated his status under the new Program Statement. After this review, the Bureau found that Boucher still failed to qualify for early release. Under the Bureau’s discretionary authority, it deemed Boucher’s sentencing enhancement for weapons possession to preclude him from receiving certain Bureau benefits, including early release.
 

 Petitioner Boucher has not filed a separate § 2241 petition challenging his denial under the new Program Statement. However, he incorporates Program Statement 5162.04 into his challenge to the denial of early release under the former policy, Program Statement 5162.02. Defendant La-Manna argues that Boucher has failed to exhaust administrative remedies relative to the new policy. In response, Boucher argues that' it would be futile to do so and that this Court should consider his challenge to the new policy.
 

 
 *886
 
 II. JURISDICTION
 

 A petition for writ of habeas corpus filed by a federal inmate under 28 U.S.C. § 2241 is proper where the inmate is challenging the manner in which his or her sentence is being executed.
 
 See Capaldi v. Pontesso,
 
 135 F.3d 1122, 1123 (6th Cir.1998). A district court has jurisdiction over a federal prisoner’s habeas corpus petition challenging the Bureau’s determination of ineligibility for sentence reduction under 18 U.S.C. § 3621(e)(2)(B).
 
 [1]
 

 See Todd v. Scibana,
 
 70 F.Supp.2d 779, 781 (W.D.Mich.1999);
 
 Scroger v. Booker,
 
 39 F.Supp.2d 1296, 1299 (D.Kan.1999).
 

 III. EXHAUSTION OF REMEDIES
 

 Boucher’s petition for habeas corpus claims the Bureau’s former policy, Program Statement 5162.02, improperly denied him early release. Respondent La-Manna concedes that Petitioner Boucher has exhausted the administrative remedies available to challenge that policy.
 

 As described, the Bureau of Prisons adopted a new policy, Program Statement 5162.04, during the course of this litigation. The Bureau denied early release under this policy as well.
 

 Petitioner Boucher challenges both the former policy and the new policy. Respondent argues that Boucher failed to exhaust available administrative remedies regarding the new policy, Program Statement 5162.04. For this reason, the Respondent says this action must be dismissed.
 

 Exhaustion of an available administrative process is usually required before an inmate may seek relief in federal court.
 
 See McCarthy v. Madigan,
 
 503 U.S. 140, 112 S.Ct. 1081, 117 L.Ed.2d 291 (1992);
 
 see also Little v. Hopkins,
 
 638 F.2d 953 (6th Cir.1981);
 
 Bode v. Guzik,
 
 86 F.3d 1155 (TABLE), 1996 WL 266431, *1 (6th Cir. May 17, 1996). This requirement serves the twin purposes of protecting administrative agency authority and promoting judicial efficiency.
 
 See McCarthy,
 
 503 U.S. at 145,112 S.Ct. 1081.
 

 It is clear that Boucher has failed to exhaust his remedies regarding Program Statement 5162.04. However, the Supreme Court has declined to require exhaustion when “administrative and judicial interests would counsel otherwise.”
 
 McCarthy,
 
 503 U.S. at 146, 112 S.Ct. 1081. In determining whether exhaustion of administrative remedies is required, this Court must balance “the interest of the individual in retaining prompt access to a federal judicial forum against countervailing institutional interests favoring exhaustion.”
 
 Id.
 
 This inquiry is “intensely practical, because attention is directed to both the nature of the claim presented and the characteristics of the particular administrative procedure provided.”
 
 Id.
 
 (citations omitted). Administrative remedies are not required “if the litigant’s interests in immediate judicial review outweigh the government’s interests in the efficiency or administrative autonomy that the exhaustion doctrine is designed to further.”
 
 Id.
 
 (citing
 
 West v. Bergland,
 
 611 F.2d 710, 715 (8th Cir.1979)).
 

 The Supreme Court has identified at least three “broad sets” of circumstances that would warrant excusing the exhaustion requirement: (1) when requiring exhaustion would lead to undue prejudice to a later court due to likely agency delay in processing the challenge to its deci
 
 *887
 
 sion; (2) when there is a question about the agency’s authority or competence to respond to the challenge; and (3) when exhaustion would be futile because the administrative body is biased or has predetermined the issue before it.
 
 Id.
 
 at 147-48, 112 S.Ct. 1081.
 

 Petitioner Boucher argues that he should be excused from fading to exhaust administrative remedies because such administrative process would be futile. Boucher says that Program Statement 5162.04 is substantively the same as program Statement 5162.02, for which Respondent concedes exhaustion. Boucher contends he should not be forced to engage in the “administrative sophistry” of another appeal of the Bureau’s decision because both categorically deny a sentence reduction to prisoners who received sentence enhancements for possession of a deadly weapon during the commission of the offense.
 

 The Court agrees that exhaustion would be futile, but for more nuanced reasons than those suggested by Petitioner Boucher.
 

 First, the mandatory nature of the new Program Statement leaves nothing to be reconsidered during an administrative appeal. Program Statement 5162.04 automatically excludes from early release all persons who have violated 18 U.S.C. § 841 and who have received two-level sentencing enhancements for firearms possession. Therefore, even if the Bureau were to review the case and discover additional reasons for denying Boucher early release, his sentencing enhancement would mandate that he be denied early release.
 

 Second, because the policy requires denial of early release credit, the issue is a legal one, unaffected by any resolution of factual matters in the administrative process.
 

 Third, there is no need to offer the Bureau an opportunity to correct any errors in its proceedings because the Bureau has consistently defended the policy in courtrooms across the country.
 

 Fourth, the Bureau concedes that if Program Statement 5162.04 is invalid, Petitioner Boucher would have been eligible for early release as of July 1999 at the earliest, six months ago. While there is no entitlement to early release,
 
 see Orr v. Hawk,
 
 156 F.3d 651, 653 (6th Cir.1998), the potential for immediate release counsels timely consideration by this Court. Under these circumstances, the interests of the agency are less persuasive than they would otherwise be.
 

 Other federal courts have excused exhaustion under similar circumstances:
 

 The fact that the BOP denied his request citing P.S. 5162.02 and subsequently amended that program statement did not put a burden upon [the Petitioner] to repeat the administrative process making the same claims but citing the amended program statement. This is so because the BOP did not change its policy as to sentence enhancements in its amended program statement. As will be more fully explained herein, the amended program statement contains the same paragraph and example as P.S. 5162.02 on which [the Petitioner’s] ineligibility was based, and this court has no doubt whatsoever that the BOP would reach the same result under the amended version. To require Ward to repeat the administrative process under such circumstances would be futile.
 

 Ward v. Booker,
 
 38 F.Supp.2d 1258, 1261 (D.Kan.1999);
 
 see also Williams v. Clark,
 
 52 F.Supp.2d 1145, 1147 n. 2 (C.D.Cal. 1999) (“[S]ince petitioner’s request for an administrative remedy was denied pursuant to ... Program Statement 5162.04 ... and because any subsequent administrative reviews certainly would have been denied under the same official policy, the further exhaustion of administrative remedies would have been futile.”) (quoting
 
 Camper v. Benov,
 
 966 F.Supp. 951, 954 (C.D.Cal.1997)).
 

 
 *888
 
 In view of all the circumstances, Petitioner Boucher’s individual interests outweigh countervailing institutional interests favoring exhaustion.
 
 See McCarthy,
 
 503 U.S. at 150, 112 S.Ct. 1081. Exhaustion would therefore be futile in this case. Although exceptions to the exhaustion requirement are extremely narrow, the Court finds this an appropriate circumstance to forego exhaustion.
 

 The Court now proceeds to address the substance of Petitioner Boucher’s claims: the invalidity of Program Statements 5162.02 and 5162.04.
 

 IV. ANALYSIS
 

 A. The Statute
 

 In the Violent Crime Control and Law Enforcement Act of 1994 (“the Act”), Congress directed the Bureau of Prisons to make substance abuse treatment available to each prisoner deemed to have a treatable condition of substance abuse or addiction.
 
 See
 
 18 U.S.C. § 3621(b). To encourage prisoner participation in and completion of these programs, Congress provided the incentive of early release:
 

 The period a prisoner convicted of a nonviolent offense remains in custody after successfully completing a treatment program may be reduced by the Bureau of Prisons, but such reduction may not be more than one year from the term the prisoner must otherwise serve.
 

 18 U.S.C. § 3621(e)(2)(B).
 

 The statute unambiguously excludes violent offenders from consideration for early release, but does not define the term “convicted of a nonviolent offense.” The statute also gives the Bureau of Prisons discretion; there is no right to early release. The statute implies two requirements. First, a prisoner must meet a basic eligibility requirement: that he was not convicted of a violent offense. Second, the prisoner must meet discretionary criteria established by the Bureau.
 

 In 1995, the Bureau adopted regulations implementing the Act.
 
 See
 
 28 C.F.R. § 550.58 (1995). In interpreting what Congress meant by a “nonviolent” crime, the Bureau attempted to determine what a “violent” crime would be; if convicted of such a “violent” crime, the inmate would not be eligible for early release consideration. The Bureau determined that inmates would be disqualified from early release under § 3621(e)(2)(B) if their offense was a “crime of violence” as defined in 18 U.S.C. § 924(c)(3). At all relevant times, § 924(c) has defined the term “crime of violence” in the following way:
 

 an offense that is a felony and—
 

 (A) has as an element the use, attempted use, or threatened use of physical force against the person or property of another, or
 

 (B) that by its nature, involves a substantial risk that physical force against the person or property of another may be used in the course of committing the offense.
 

 18 U.S.C. § 924(c)(3) (Supp.1998).
 

 The Bureau also issued Program Statement 5162.02 to further explain its interpretation of the term “crime of violence.” Under the policy, any prisoner convicted of,
 
 inter alia,
 
 a drug offense under 18 U.S.C. § 841 and receiving a two-level sentence enhancement for possession of a firearm was deemed to have been convicted of a violent offense. In short, the Bureau explicitly defined § 3621(e)(2)(B) to exclude from early release consideration any prisoner receiving such a sentencing enhancement.
 

 Here, Petitioner Boucher was convicted of violating 18 U.S.C. § 841 and received a two-level sentence enhancement for firearms possession. Accordingly, the Bureau denied his request for early release under Program Statement 5162.02, finding him ineligible for consideration under the statute. This denial is the basis for Boucher’s petition.
 

 As explained in the next two sections, prisoners around the country successfully
 
 *889
 
 challenged the Bureau’s interpretation of the statute. In response, the Bureau adopted Program Statement 5162.04, which uses essentially the same language as Program Statement 5162.02. The Bureau defends this new policy as falling under the Bureau’s discretionary authority. The Bureau reclassified Boucher’s offense under the new policy and denied him early release.
 

 Thus, Petitioner Boucher’s petition has evolved into a challenge of the Bureau’s new policy, Program Statement 5162.04. However, Petitioner Boucher has not withdrawn his challenge to Program Statement 5162.02, nor has Defendant LaManna specifically retreated from its defense of the earlier policy. The Court therefore addresses both Program Statements.
 

 As explained below, the Sixth Circuit has ruled that Program Statement 5162.02 is an invalid interpretation of statutory language. But the Sixth Circuit has not spoken decisively on the new policy, Program Statement 5162.04. Upon examining the Sixth Circuit’s decisions under the pri- or policy and in view of other courts’ review of both policies, the Court finds Program Statement 5162.04 to be valid.
 

 B. The Old Policy: Program Statement 5162.02
 

 After Boucher filed his petition challenging Program Statement 5162.02, the Sixth Circuit found that the Bureau of Prisons wrongly defined possession of firearms during the commission of a drug offense as being a violent offense rendering prisoners ineligible for early release consideration.
 
 See Orr v. Hawk,
 
 156 F.3d 651 (6th Cir.1998),
 
 rehearing en banc denied by
 
 172 F.3d 411 (6th Cir.1999). In
 
 Orr v. Hawk,
 
 the petitioner was convicted of one count of conspiracy to distribute and possess a controlled substance under 18 U.S.C. §§ 841 and 846. He was also convicted of one count of possessing a firearm as a previously convicted felon in violation of 18 U.S.C. § 922(g). After incarceration, inmate Orr enrolled in a drug treatment program and then petitioned the Bureau for a one-year reduction in sentence.
 

 The Bureau of Prisons denied Petitioner Orr’s request, reasoning that the conviction for firearm possession was a “crime of violence” under 18 U.S.C. § 924(c)(3). Under Program Statement 5162.02, Orr was not eligible to be considered for early release because he was not convicted of a “nonviolent offense.”
 

 The Sixth Circuit rejected the Bureau’s reasoning.
 
 [2]
 
 The Court stated that although
 
 §
 
 3621 does not define “nonviolent offense,” the Bureau did not have the authority to define the term any way it saw fit.
 
 See Orr,
 
 156 F.3d at 652-53, 655-56. The Sixth Circuit noted that the Bureau had “no choice” but to define “nonviolent offense” under § 3621(e)(2)(B) by first determining what “crime of violence” means.
 
 Id.
 
 at 655. After reviewing the Criminal Code, the Sixth Circuit found no statutory basis for including “mere possessory offenses” within the definition of “crime of violence.”
 
 Id.
 
 at 655-56. Therefore, the Bureau of Prisons incorrectly found that persons convicted of possession offenses are ineligible for early release.
 

 If those convicted of weapons possession are not violent offenders, it follows that those merely receiving sentencing enhancements for firearms possession are not barred
 
 from
 
 consideration. Indeed, the Sixth Circuit has so concluded in a more recent case.
 
 See Braxton v. Dove,
 
 182 F.3d 916 (TABLE), 1999 WL 430584 (6th Cir. June 17,1999).
 

 
 *890
 
 In
 
 Braxton,
 
 the petitioner pleaded guilty to conspiracy to distribute cocaine and was acquitted of firearms possession. Despite the acquittal, the petitioner received a two-point sentence enhancement for firearms possession. The Bureau denied the petitioner eligibility for early release under Program Statement 5162.02, concluding that the sentencing enhancement indicated the petitioner was convicted of a violent offense. In light of
 
 Orr v. Hawk,
 
 the Sixth Circuit disagreed, finding the Bureau’s definition of “nonviolent offense” to be without statutory support and in conflict with case law.
 
 Id.
 
 at *1.
 

 The Sixth Circuit’s conclusion that Program Statement 5162.02 is incompatible with the statute is in good company. Most circuits having had occasion to address the issue have determined that the Bureau of Prisons overstepped its authority by redefining what qualifies as a “nonviolent offense.”
 
 See, e.g., Downey v. Crabtree,
 
 100 F.3d 662 (9th Cir.1996);
 
 Fristoe v. Thompson,
 
 144 F.3d 627, 631 (10th Cir.1998);
 
 Byrd v. Hasty,
 
 142 F.3d 1395, 1397 (11th Cir.1998);
 
 Martin v. Gerlinski,
 
 133 F.3d 1076, 1079-1080 (8th Cir.1998);
 
 Bush v. Pitzer,
 
 133 F.3d 455, 457 (7th Cir.1997);
 
 Roussos v. Menifee,
 
 122 F.3d 159, 162-164 (3d Cir.1997);
 
 but see Pelissero v. Thompson,
 
 170 F.3d 442 (4th Cir.1999);
 
 Venegas v. Henman,
 
 126 F.3d 760 (5th Cir.1997).
 

 Under
 
 Orr
 
 and
 
 Braxton,
 
 Program Statement 5162.02 is invalid. The eligibility to be considered for early release turns on the offense of conviction, not upon any sentencing enhancement that attended such conviction. Pursuant to the holdings of
 
 Orr
 
 and
 
 Braxton,
 
 the Court grants Petitioner Boucher’s writ as it relates to Program Statement 5162.02.-
 

 C. The New Policy: Program Statement 5162.04
 

 In response to the decisions finding Program Statement 5162.02 invalid, the Bureau amended the relevant regulations and adopted a new Program Statement in October 1997. In these amendments, the Bureau attempted to avoid the pitfalls of its earlier policy by shifting its attention from the statutory meaning of “nonviolent offense” to interpreting the extent of its discretionary authority under the statute. As explained below, the Bureau’s new policy focuses on which eligible prisoners would nonetheless be denied early release via the Bureau’s, discretionary authority.
 

 In
 
 Orr
 
 and
 
 Braxton,
 
 the Sixth Circuit directed the Bureau to ignore sentencing enhancements when determining whether prisoners are eligible for early release consideration' under the statute. However, the Sixth Circuit has not addressed whether the Bureau may, at its discretion, look to sentencing factors to decide which otherwise eligible inmates are appropriate candidates for early release. Upon reviewing Program Statement 5162.04, this Court concludes that the Bureau may consider sentencing enhancements in denying early release for nonviolent offenders who received sentencing enhancement for weapons possession.
 

 In October 1997, the Bureau promulgated amendments to C.F.R. § 550.58 to read, in relevant part:
 

 Additional early release criteria. (1) As an exercise of the discretion vested in the Director of the Federal Bureau of Prisons, the following categories of inmates are not eligible for early release:
 

 s¡¡ ^ ^
 

 (vi) Inmates whose current offense is a felony:
 

 (A) That has as an element, the actual, attempted or threatened use of physical force against the person or property of another, or
 

 (B) That involved the carrying, possession or use of a firearm or other dangerous weapons or explosives ..., or
 

 (C) That by its nature or conduct, presents a serious potential risk of physical force against the person or property of another, or
 

 
 *891
 
 (D) That by its nature or conduct involves sexual abuse offenses committed upon children.
 

 28 C.F.R. § 550.58(a)(1) (October 15, 1997) (emphasis added).
 

 To assist Bureau staff in understanding the amendments to § 550.58, the Bureau issued Program Statement 5162.04, “Categorization of Offenses,” effective October 9, 1997. Section 2 of Program Statement 5162.04 provides that “[ajn inmate will be denied the benefits of certain programs if his or her offense is either a crime of violence
 
 or an offense identified at the discretion of the Director
 
 of the Bureau of Prisons.” Program Statement 5162.04(2), at 1 (emphasis added).
 

 Section 6 of the new policy lists violations that are “crimes of violence.” Section 6 rightly does not include 18 U.S.C. § 841(a) or (b), the statute under which Petitioner Boucher was convicted, as a crime of violence. Thus, Program Statement 5162.04 would not exclude Boucher from eligibility for early release consideration as the prior policy did.
 

 Instead, the Bureau excluded Boucher under Program Statement 5162.04 by invoking its discretionary authority. Specifically, Section 7 of the new policy lists offenses that are not crimes of violence
 
 per se,
 
 but which nevertheless preclude early release:
 

 7.
 
 OFFENSES THAT AT THE DIRECTOR’S DISCRETION SHALL PRECLUDE AN INMATE’S RECEIVING CERTAIN BUREAU PROGRAM BENEFITS
 
 For certain Bureau programs, such as early release pursuant to 18 U.S.C. § 3621(e) ... an inmate may be denied program benefits if he or she was convicted of an offense listed in either this section or Section 6. If an inmate is denied the benefit of such a program, staff must carefully describe the basis of the denial. For example, if an inmate is
 
 convicted
 
 of an offense listed in this section, the inmate shall be denied a program benefit because he or she committed an offense identified at the Director’s discretion, rather than a crime of violence.
 

 Program Statement 5162.04, at 9 (emphasis added). Although this portion of Section 7 uses the term “conviction,” the Program Statement proceeds to clarify that the conviction is not the decisive factor; rather, the sentencing enhancement accompanying the conviction determines whether the Bureau will exercise its discretion and deny early release.
 
 See
 
 Program Statement 5162.04(7)(b). The Program Statement offers as an example the exact situation facing Petitioner Boucher:
 

 Example:
 
 Section 841 of Title 21, United States Code makes it a crime to manufacture, distribute, or possess with the intent to distribute drugs. Under the Sentencing Guidelines (§ 2D1.1 and § 2D1.11), the defendant could receive an increase in his or her base offense level because of a “Specific Offense Characteristic” (for example, if a dangerous weapon was possessed during the commission of the offense), the court would increase the defendant’s base offense level by two levels. This particular “Specific Offense Characteristic” (possession of a dangerous weapon during the commission of a drug offense) poses a serious potential risk that force may be used against persons or property. Specifically, as noted in the U.S. Sentencing Guidelines § 2D1.1, application note 3, the enhancement for weapon possession reflects an increased danger of violence when drug traffickers possess weapons. Accordingly, an inmate who was convicted of manufacturing drugs, (21 U.S.C. § 841) and received a two-level enhancement for possession of a firearm has been convicted of an offense that will preclude the inmate from receiving certain Bureau program benefits.
 

 Program Statement 5162.04(7)(b), at 12.
 

 The language of this example is clumsy — the Bureau likens receiving a two-level sentencing enhancement for weapons
 
 *892
 
 possession to being “convicted” of an offense that precludes early release. The Bureau’s use of similar language under the earlier policy, Program Statement 5162.02, was roundly rejected because it wrongly denied prisoners at the first stage of analysis — i.e., the statutory eligibility stage— from being considered for early release. However, the Bureau’s new policy applies to the second stage of analysis.
 

 Even though an inmate is eligible for early release credit, the Bureau of Prisons is not required to give it.
 
 See
 
 18 U.S.C. § 3621(e)(2)(B) (“The period a prisoner convicted of a nonviolent offense remains in custody after successfully completing a treatment program
 
 may
 
 be reduced by the Bureau of Prisons.”) (emphasis added). As the Sixth Circuit has made clear, because “[njothing in the statute requires the BOP to grant early release to any eligible prisoner,” the agency has “substantial discretion” when determining who, within the eligible group of inmates, receives early release.
 
 See Orr,
 
 156 F.3d at 653. Although the Sixth Circuit has not considered the boundaries of the Bureau’s discretion under the new Program Statement, this Court finds the reasoning of other appellate courts persuasive on this issue.
 

 Three appellate courts have found the categorical exclusions in Program Statement 5162.04 to fall well within the Bureau’s discretionary authority. The Ninth Circuit Court of Appeals succinctly explained why this is so:
 

 It is clear enough that the Bureau could not go on construing the phrase “nonviolent offense” in a manner contrary to [the statute]. But the Bureau did not do that at all [in the new policy]. Once it was foreclosed from a simple interpretation of the statute, it, instead, exercised the discretion that Congress indisputably conferred upon the Director and reached the same conclusion on an entirely different ground. It can hardly be doubted that “an agency is free on remand to reach the same result by applying a different rationale.” ...
 

 There can be little doubt that the Bureau has “broad discretion in administering the sentence reduction treatment program.” That discretion extends to the creation of categorical exclusions. No doubt, the exercise must be reasonable, but we see nothing unreasonable in the Bureau’s making the common-sense decision that there is a significant potential for violence from criminals who carry, possess or use firearms while engaged in their felonious employment, even if they have wound up committing a nonviolent offense this time.
 

 Bowen v. Hood,
 
 202 F.3d 1211, 1218-19 (9th Cir.2000) (citations omitted).
 

 Other appellate courts have reasoned similarly.
 
 See, e.g., Bellis v. Davis,
 
 186 F.3d 1092, 1095 (8th Cir.1999) (finding the categorical exclusion of nonviolent offenders whose underlying conduct indicates a threat to public safety a “manifestly permissible construction of the statute and an appropriate exercise of the BOP’s discretion”);
 
 Bush v. Pitzer,
 
 133 F.3d 455, 458 (7th Cir.1997) (stating that the Bureau is entitled to use “any rational, non-invidious criteria when deciding which of the statutorily ‘eligible’ prisoners receive reductions” and that an inmate “whose offense is ‘nonviolent’ but whose underlying conduct is violent or prone to violence rationally can be excluded from the program”);
 
 but see Ward v. Booker,
 
 202 F.3d 1249 (10th Cir.2000) (rejecting
 
 Beilis
 
 and holding that the statute requires a focus on the offense of conviction, disallowing any consideration of sentencing factors).
 

 There may be no difference in effect between the Bureau’s former, invalid policy and Program Statement 5162.04; both deny early release to prisoners with two-level sentencing enhancements for firearms possession. But the Bureau is not precluded from reaching the same result through a lawful exercise of its discretion simply because its earlier classification was unlawful. An agency is free, “in the exer
 
 *893
 
 cise of its lawful discretion, [to] reach the same result for a different reason.”
 
 Federal Election, Comm’n v. Akins,
 
 524 U.S. 11, 25, 118 S.Ct. 1777, 141 L.Ed.2d 10 (1998) (citing
 
 SEC v. Chenery Corp.,
 
 318 U.S. 80, 68 S.Ct. 454, 87 L.Ed. 626 (1943)).
 

 Unlike the former policy, the new policy does not overreach by creating its own definition of what “convicted of a nonviolent offense” means. Instead, Program Statement 5162.04 focuses on whether early release would be advisable for those who meet the only explicit requirement under the statute: that they be convicted of a nonviolent offense.
 

 Further, the earlier and current policies are analytically distinct. Under the earlier policy, Program Statement 5162.02, the Bureau defined prisoners receiving two-level enhancement for weapons possession as being “violent offenders.” As the case law makes clear, basic eligibility under the statute is limited to consideration of the offense of conviction only.
 
 [3]
 
 Under the new policy, Boucher’s convictions under 18 U.S.C. § 841 is not considered a violent crime. Program Statement 5162.04 simply allows the Bureau to use it discretion to find that persons who possess weapons during the commission of a drug offense are a greater risk.
 

 There is also a substantive difference between persons convicted under § 841 who did not possess a weapon at the time of their offense and those who committed a drug offense while possessing a firearm. This Court cannot say the Bureau’s categorical exclusion of the latter is an unreasonable interpretation of the statute.
 

 V. CONCLUSION
 

 For these reasons, the Court grants Petitioner Boucher’s habeas petition with regard to Program Statement 5162.02 and denies the petition insofar as it addresses Program Statement 5162.04. Accordingly, this action is dismissed. Further, the Court certifies, pursuant to 28 U.S.C. § 1915(a)(3), that an appeal from this decision could not be taken in good faith.
 

 IT IS SO ORDERED.
 

 [1]
 

 . As one court in the Sixth Circuit pointed out, review of the Bureau's substantive decisions to grant or deny early release under § 3621 are not reviewable.
 
 See Davis v. Beeler,
 
 966 F.Supp. 483, 490 (E.D.Ky.1997) (acknowledging that Congress specifically excluded § 3621 from coverage under the Administrative Procedure Act).' However, the Court has authority to determine whether the Bureau's interpretation of the statute is valid.
 
 See Chevron U.S.A., Inc. v. Nat’l Resources Defense Council,
 
 467 U.S. 837, 843 n. 9, 104 S.Ct. 2778, 81 L.Ed.2d 694 (1984) ("The judiciary is the final authority on issues of statutory construction."). In this case, the Court must determine whether the Bureau's policies overstep the authority granted to it under the statute.
 

 [2]
 

 . The Court made its decision after acknowledging that some deference is due to the Bureau’s regulations and internal policies. After much consideration, the Sixth Circuit found that the regulations and internal interpretation of those regulations were entitled to less than full deference under
 
 Chevron. See Orr,
 
 156 F.3d at 655 and n. 1.
 
 But see Bush v. Pitzer,
 
 133 F.3d 455, 457-58 (7th Cir.1997) (characterizing the new 28 C.F.R. § 550.58 as a product of a notice and comment rulemak-ing entitled to full
 
 Chevron
 
 deference).
 

 [3]
 

 . As explained in the text, the Sixth Circuit has determined that even convictions for weapons possession do not make prisoners violent offenders for purposes of § 3621(e)(2)(B).
 
 See Orr,
 
 156 F.3d at 656. The
 
 Braxton
 
 court determined that a sentencing enhancement for weapons possession does not convert a nonviolent crijne into a violent one. Both
 
 Orr
 
 and
 
 Braxton
 
 were limited to the first stage of analysis; i.e., whether an inmate was eligible to be considered for early release. Neither case addressed what the Bureau may consider after an inmate meets basic qualifications under the statute.